**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Angel Padilla, | No. CV-21-00453-TUC-CKJ |
| Plaintiff, | |
| v. | **ORDER** |
| David Shinn, et al., | |
| Defendants. | |

Plaintiff Angel Padilla, who is currently confined in the Arizona State Prison Complex-Lewis, brought this civil rights action pursuant to 42 U.S.C. § 1983. He alleges Defendants violated his due process rights when they removed him from the Arizona Department of Correction's (ADC) Security Threat Group (STG) Step-Down Program (SDP). He also alleged that the conditions at ASPC-Eyman, Browning Unit, violated his Eighth Amendment rights. On March 13, 2023, the Court granted in part summary judgment for Defendants based on Plaintiff's failure to exhaust his administrative remedies on the Eighth Amendment claim. The Court denied in part summary judgment and afforded Defendants an opportunity to file a successive motion for summary judgment on the merits of the due process claim. On April 12, 2023, Defendants filed a Motion for Summary Judgment. The Court informed the Plaintiff of his rights and obligations to respond pursuant to *Rand v. Rowland,* 154 F.3d 952, 962 (9th Cir. 1998) (*en banc*). (Order (Doc.40)). Plaintiff did not file a Response to the Motion for Summary Judgment.

The standard for granting summary judgment remains as previously described by the Court when it granted in part and denied in part summary judgment on the issue of exhaustion, as follows:

> A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.
>
> If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).
>
> At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

(Order (Doc. 37) at 2-3.)

In viewing the evidence in the light most favorable to the Plaintiff, the nonmoving party, the Court considers as evidence in opposition to summary judgment his contentions offered in his Complaint because the contents have been verified by attestation under penalty of perjury as true and correct. Because Plaintiff is pro se and did not file a response or controverting statement of facts, the Court will consider Defendants' supported facts as undisputed except the Court will consider as evidence in opposition to summary judgment all the nonmovant's first-hand factual contentions or other admissible evidence set forth in a verified complaint or motion. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

**I.      Facts: Plaintiff's Removal from SDP and return to Maximum Security**

ADC's STG policy is dedicated to controlling prison gang activity in Arizona's prisons. (DSOF, Doc. 39 at 1 ¶ 1.) The Special Security Unit (SSU) gathers information about prisoners suspected of being in a STG. (*Id.* ¶ 3.) When enough information is collected, a validation packet is completed, *and a hearing is conducted*. (*Id.*) At the time Plaintiff was removed from SDP, *a prisoner who was validated as an STG-member was classified as maximum custody*. (*Id.*) Once validated, a prisoner could only have his custody reduced from maximum custody if he renounced his STG membership and was debriefed *or successfully completed the SDP*. (*Id.* ¶ 4.)

Plaintiff does not challenge the procedures, including notice and hearing, related to his validation as an STG-member and related classification as maximum custody; Plaintiff has been a validated STG-member (New Mexican Mafia) since September 16, 2005. (*Id.* ¶ 21.) Because he has never renounced his STG membership, he remains a validated STG member.

The SDP is an alternative, indirect way of demonstrating a disassociation with gang activity that does not require renunciation and debriefing. (*Id.* ¶ 5.) Among other things, to be eligible, the prisoner must have successfully completed a 24 month-period during which he has not participated in any documented STG/gang activity or other behaviors, including, but not limited to, assaultive or violent behavior and drug use or possession. (*Id.* ¶ 8.) After a comprehensive investigation and assessment, based on their prior activities, validated STG prisoners must successfully complete the SDP to be eligible to reintegrate into close custody institutions when their behaviors demonstrate that they do not pose a threat to staff, prisoners, or the safe, secure, and orderly operations of the institution. (*Id.* ¶ 11.) The SDP review process must be completed within 18 months of the date of the entry into the program. (*Id.* ¶ 12.) If the prisoner successfully completes the 18-month program and passes a polygraph examination, he becomes eligible for close custody. (*Id.* ¶ 13.) After Phase IV is completed and a successful transition to a close custody unit has occurred,

Phase V begins. (*Id.* ¶ 14.) Phase V is an indefinite period of monitoring for SDP prisoners. (*Id.*)

Plaintiff does not challenge the eligibility determinations, his placement in SDP and reintegration from maximum custody to a close custody institution. It is undisputed that he had transitioned to and was housed in a close custody facility; in January 2021, he was in SDP, Phase V. (*Id.* ¶ 22.)

In January 2021, ADC's Department Order (DO) 806 stated that prisoners enrolled in the SDP may be removed from Phases IV or V of the SDP or returned to repeat any phase, upon confirmation that the prisoner has violated any of a number of criteria outlined in DO 806. (*Id.* ¶ 15.)

All recommendations for the removal of a prisoner from the SDP Phases IV or V were forwarded to the Security Operations Administrator or designee and must include all supporting documentation. (*Id.* ¶ 16.) The SSU Coordinator delivered to the prisoner, at least ten business days prior to the hearing, the Hearing Notification/Step-Down Revocation, Form 806-10, to allow the prisoner time to prepare a defense. (*Id.* ¶ 17.) Recommendations for removal from the SDP Phases IV or V were approved by the STG Validation Hearing Committee and could be appealed to the STG Appeals Committee. (*Id.* ¶ 18.)

Prisoners removed from the SDP, due to direct involvement in STG activity or for any reason deemed appropriate by the STG Validation Hearing Committee, during the prisoner's placement in the program were required to serve a minimum of two years under validated status before being eligible to participate in the program again. (*Id.* ¶ 19.) Prisoners have two opportunities to participate in the SDP. (*Id.* ¶ 20.) Prisoners who have twice been removed from the program become permanently ineligible from participating in the SDP. (*Id.*) The prisoner shall remain in validated status unless they choose to participate in the debrief process. (*Id.*) Prisoners were permitted to renounce and debrief at any time. (*Id.* ¶ 6.)

In Plaintiff's case, his removal from SDP resulted from the discovery of a smartphone in Plaintiff's cell on October 23, 2020; Plaintiff was verbally placed on report for possessing a prohibited device. (*Id.* ¶ 23; Doc. 39-2 at 2-7.) On November 10, 2020, Plaintiff was given an Inmate Disciplinary Report, which included a Charge and a Statement of Violation. (Doc. 39-2 at 3.) The Inmate Disciplinary Report indicates that Plaintiff was offered and declined assistance and requested witnesses and Witness Request Statements. (*Id.* at 3-4.) On November 19, 2020, the hearing was held, and Plaintiff was found guilty and disciplined for possessing a prohibited communication device. (*Id.* at 9-10.)

Prisoners may be removed from the SDP for violations involving cell phone/cell phone accessory and/or any unauthorized form of communication. (DSOF ¶ 28.) Defendant Barsutos determined that the evidence documented by Plaintiff's disciplinary violations was sufficient to remove Plaintiff from the SDP and recommended Plaintiff's removal in a December 29, 2020, Memorandum to Defendant Reyna. (Doc. 39-2 at 1.) Investigative Manager Robert Williams approved Plaintiff's removal from the SDP, and on January 6, 2020, Defendant Roberts approved Plaintiff's removal. (*Id.*)

Defendant Barsutos determined that Plaintiff's behavior and ongoing STG activity presented a security risk at the Cimarron Unit. (DSOF ¶ 31.) As a result, before Plaintiff was removed from the SDP, he was transferred to a detention unit. (*Id.*) On January 15, 2021, Plaintiff received a Notice of Hearing and Inmate Rights (Proposed Maximum Custody Placement). (Doc. 39-4 at 8-9.) Plaintiff waived the 48-hour notice requirement, and a hearing was conducted the same day. (*Id.*) After the hearing, it was recommended that Plaintiff be placed in maximum custody due to his status as a validated STG member. (*Id.* at 6-7.) The Deputy Warden and Warden approved Plaintiff's classification to maximum custody on January 21, 2021. (*Id.* at 6.)

According to the Plaintiff, and adopted here by the Court for purposes of deciding the Motion for Summary Judgment, on January 11, 2021, Plaintiff was remanded and transferred from close custody at ASPC Cimarron Unit to maximum security Browning

Unit because he was removed from SDP, without being afforded due process, based only on the disciplinary action related to the contraband cell phone that caused him to be returned to maximum custody at Browning Unit. (Complaint (Doc. 1) at 5.)

In the Complaint, Plaintiff alleges that on January 11, 2021, Defendants Higginson and Pacheco, along with other Defendants, violated his due process rights when they deviated from the established policy in effect at the time and removed him from close custody confinement, revoked his "inactive"[1] status, and transferred him back to the Browning Unit as an active STG member without notice, a hearing, an opportunity to be heard, or a valid reason. (Doc. 1 at 5-8.) Plaintiff claims Defendant Lewis conducted a March 3, 2021, review of Plaintiff's maximum custody placement, but capriciously used Plaintiff's initial validation as an active STG member to justify Plaintiff's current placement in maximum custody confinement. (Doc. 1 at 10.)

Defendants admit that Plaintiff was removed from SDP based on the November 19, 2020, disciplinary action involving the cell phone. (Towles Decl. ¶¶ 26-29.) Further, Defendants admit that Plaintiff should have been provided a hearing pursuant to the version of DO 806 in effect in January 2021, but was mistakenly removed from SDP according to new procedures being implemented, effective April 15, 2021. *Id.* ¶ 40. Neither party provides the Court with the actual date Plaintiff was moved from close custody to maximum custody at Browning Unit.

Under the new procedures: there are no longer removal hearings because removal from SDP does not require an inmate to be returned to maximum custody, *id.* ¶ 33; if an inmate removed from SDP is classified as maximum, DO 801 provides due process protections regarding that placement, *id.* ¶ 34; DO 801 now allows inmates, who were validated STG, to be considered for classification lower than maximum even if they have not renounced or completed the SDP, *id.* ¶ 36; prior to approving a classification to

---

[1] Here, "active/inactive status" refers to the "absence of gang activity," which is the primary eligibility requirement for the SDP, not the validated STG status which remains at all times, even during SDP, (DSOF (Doc. 39) ¶¶ 5, 8), until and unless a STG member chooses to participate in the debrief process, *id.* ¶ 20.

maximum custody, the inmate is provided a notice of the reasons for the maximum custody recommendation, a summary of the evidence relied upon, an opportunity to request witness statements, and a hearing, *id.* ¶ 37; inmates may appeal the decision to place them in maximum custody, *id.* ¶ 38; inmates in maximum custody have their classifications reviewed 180 days after initial placement and annually thereafter, *id.* ¶ 39.

On August 24, 2022, with notice,[2] Plaintiff was provided a hearing before the STG Validation Hearing Committed, during which he voluntarily removed himself from SDP, *id.* ¶ 43, signed the revocation hearing acknowledgment that he accepted removal from SDP, *Id.* ¶ 44, and is now housed in ASPC-Lewis and classified as a close custody inmate, *id.* ¶ 45. He has not been housed in maximum custody since September 13, 2022. *Id.* ¶ 46.

## II. Discussion

### A. Injunctive Relief

In his Request for Relief in the Complaint, Plaintiff asked the Court to issue a preliminary and permanent injunction ordering his immediate removal from Browning Unit and reinstatement to close custody status and removal of the STG validation status factors that increased his custody level and classification score. (Doc. 1 at 21.) Defendants contend Plaintiff's claims for injunctive relief are moot because he chose to remove himself from the SDP and is now classified as close custody. (Doc. 38 at 12.)

Under Article III of the Constitution, the jurisdiction of a federal court depends on the existence of a "case or controversy"; without a case or controversy, a claim is moot. *Pub. Util. Comm' n of State of Cal. v. FERC*, 100 F.3d 1451, 1458 (9th Cir. 1996). A claim is considered moot if it is no longer a present and live controversy or if no effective relief can be granted. *Mitchell v. Dupnik*, 75 F.3d 517, 527–28 (9th Cir. 1996). When a question before the court has been mooted by changes in circumstances after the complaint is filed, there is no justiciable controversy. *Flast v. Cohen*, 392 U.S. 83, 95 (1968).

---

[2] Plaintiff was given Hearing Notification/Step-Down Revocation, Form 806-10, but the actual notice is not in the record.

1    Questions of mootness regarding injunctions are viewed "in light of the present circumstances." *Id.* at 528. "[A] suit for injunctive relief is normally moot upon the termination of the conduct at issue." *Demery v. Arpaio*, 378 F.3d 1020, 1025-26 (9th Cir. 2004). Thus, if a prisoner is no longer subjected to prison officials' allegedly unlawful activity, the complaint for injunctive relief becomes moot. *Wiggins v. Rushen*, 760 F.2d 1009, 1011 (9th Cir. 1985). A case becomes moot only "if subsequent events ma[ke] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (internal quotation marks and citations omitted).

Defendants have presented evidence that Plaintiff voluntarily removed himself from the SDP, is no longer classified as maximum custody, Plaintiff is no longer in maximum custody at Browning Unit, and is classified and housed as close custody confinement. It cannot reasonably be expected that he will be returned to maximum custody without due process. Plaintiff has not shown that it can be reasonably expected that he will be subjected again to the alleged deficient SDP due process, which appears to have resulted from the mistaken application of the "no hearing" change, effective April 15, 2021, without application of other attendant April 15, 2021, program changes. Any future involvement in SDP would be pursuant to all procedural changes effectuated April 15, 2021, including entirely different procedures for custody classifications and removal from SDP. The Court concludes Plaintiff's claims for injunctive relief are moot and will be dismissed.

**B. Due Process Violation: *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022)**

The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In order to analyze a procedural due-process claim, the Court engages in a two-step analysis: First, the Court must determine whether the prisoner was deprived of a constitutionally protected liberty or property interest. *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). Second, the Court must examine whether that deprivation was accompanied by sufficient procedural protections. *Id.* (citing *United States v. 101*

*Houseco, LLC*, 22 F.4th 843, 851 (9th Cir. 2022)).  To determine whether the procedural protections provided are sufficient at the second step, the Court looks to (1) the private interest affected; (2) the risk of an erroneous deprivation and the probable value of any additional or substitute procedural safeguards; and (3) the government's interest.  *Id.* at 1179-80 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

"A liberty interest 'may arise from the Constitution itself . . . or it may arise from an expectation or interest created by state laws or policies.'" *Id.* at 1180 (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)).  "The Constitution does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement, but such an interest may 'arise from state policies or regulations.'" *Id.* (quoting *Wilkinson*, 545 U.S. at 221–22); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) ("[T]he Due Process Clause [does not] ... protect a duly convicted prisoner against transfer from one institution to another within the state prison system.  Confinement in any of the State's institutions is within the normal limits or range of custody.")).  "However, an interest in avoiding certain conditions of confinement 'will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* (quoting *Sandin v. Conner*, 515 U.S. 472 (1995) (citations omitted)).

The Ninth Circuit's opinion in *Johnson* controls this case.  In *Johnson*, the plaintiff was removed from SDP and close custody, and returned to maximum custody.  *Johnson*, 55 F.4th at 1178.  The Ninth Circuit upheld this Court's finding that the plaintiff did not have an independent liberty interest in participation in the SDP.  *Id.* at 1201.  The Ninth Circuit in *Johnson* found that the plaintiff had a protected liberty interest in avoiding return to maximum security from close custody.  *Id.* at 1197-98.  Thus, the Ninth Circuit held, the plaintiff was entitled to constitutionally adequate procedures before he was moved to maximum custody.  *Id.* at 1198.

Defendants admit that the Plaintiff was removed from SDP based on the November 19, 2020, disciplinary action involving the contraband cell phone incident, without due process. Under *Johnson, the* Plaintiff did not have an independent liberty interest in participation in the SDP, and his removal from the program did not implicate the Due Process Clause. Defendants admit the Plaintiff should have been, but was not, provided due process, including notice and a hearing, before being moved from the closed custody facility, Cimarron Unit, to maximum custody at Browning Unit.[3] Under *Johnson,* Plaintiff was entitled to due process procedures before he was moved to maximum custody.  It is undisputed that Plaintiff did not receive a maximum custody placement hearing until after he commenced this litigation.  Thus, a reasonable jury could conclude that Plaintiff did not receive the constitutionally required due process procedures before he was moved to maximum custody.

### C. Qualified Immunity

Defendants argue that even if Plaintiff's due process rights were violated, they are entitled to qualified immunity from liability related to Plaintiff's claims for money damages. (Doc. 38 at 14-15.)

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In deciding if qualified immunity applies, the Court must determine: (1) whether the facts alleged show the defendant's conduct violated a constitutional right; and (2) whether that right was clearly established at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223, 230-32, 235-36 (2009) (courts may address either prong first depending on the circumstances in the particular case).

---

[3] There are two "Notice of Hearing and Inmate Rights (Proposed Maximum Custody Placement)" forms in the record. The March 3, 2021, notice references an 1/11/21 incident involving a prison made weapon discovered in Plaintiff's cell. (DSOF (Doc. 39-4) at 1-5.) The January 15, 2021, notice references only that he is a validated STG member, SDP has been revoked. *Id.* at 6-9. The Court assumes this notice relates to the 11/19/2020 cell phone incident.

1  Whether a right was clearly established must be determined "in light of the specific
2  context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201
3  (2001). The plaintiff has the burden to show that the right was clearly established at the
4  time of the alleged violation. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002); *Romero*
5  *v. Kitsap Cnty.*, 931 F.2d 624, 627 (9th Cir. 1991). "[T]he contours of the right must be
6  sufficiently clear that at the time the allegedly unlawful act is [under]taken, a reasonable
7  official would understand that what he is doing violates that right;" and "in the light of pre-
8  existing law the unlawfulness must be apparent." *Mendoza v. Block*, 27 F.3d 1357, 1361
9  (9th Cir. 1994) (quotations omitted). Therefore, regardless of whether the constitutional
10 violation occurred, the officer should prevail if the right asserted by the plaintiff was not
11 "clearly established" or the officer could have reasonably believed that his particular
12 conduct was lawful. *Romero*, 931 F.2d at 627.

13 According to Defendants, the Ninth Circuit in *Johnson* "only just held that while
14 there is no liberty interest in being removed from the Step-Down Program[,] there is a
15 liberty interest implicated under the Due Process Clause in returning an inmate to
16 maximum security from close custody after that inmate has been removed from the Step-
17 Down Program." (MSJ (Doc. 38) at 16 (citing *Johnson*, 55 F.4th at 1198).) Defendants
18 characterize *Johnson* as a "case of first impression on this issue." (*Id.*)

19 The Ninth Circuit in *Johnson* explicitly defined the right at issue as a liberty interest
20 in "avoiding a return to maximum custody from close custody." The plaintiff in *Johnson*
21 had attained Phase IV in the SDP and, like the Plaintiff, had been moved from maximum
22 custody at Browning Unit to a closed custody facility. The Ninth Circuit observed that the
23 plaintiff's liberty interest in avoiding maximum custody was clearly established.
24 "After *Sandin*[*v. Conner,* 515 U.S. 472, 484 (1995)], it is clear that the touchstone of the
25 inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive
26 conditions of confinement is . . . the nature of those conditions." *Johnson*, 55 F. 4th at 1197
27 (quoting *Wilkinson* [*v. Austin*, 545 U.S. 209, 223 (2005)). Equally clear, conditions of
28 confinement paralleling those at Browning Unit impose an "atypical and significant

hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 1197-98 (quoting *Sandin*, 515 U.S. at 484). In *Johnson,* the Court compared *Brown v. Or. Dept. Corrections*, 751 F.3d 983 985 (9th Cir. 2014) and *Wilkinson,* 545 U.S. at 214*,* and found similar conditions there to maximum custody at Browning Unit, described by Johnson as follows:

> [H]e is confined to his cell twenty-four hours per day and is strip searched and handcuffed when he leaves his cell. DO 812 permits inmates a maximum of three phone calls per week, three non-contact visits per week, and three three-hour recreation opportunities per week. Per Arizona regulations, maximum-custody inmates require single-cell housing, are escorted in full restraints any time they move within the institution, are frequently monitored, and have only limited work opportunities within the secure perimeter. DO 801.01.12.4.

*Id.* at 1197-98.

Is this clearly established law, i.e., the right to avoid conditions in maximum custody without due process, sufficient to preclude Defendants' claim of qualified immunity? No: the bar is low for defendants to secure the protections afforded by qualified immunity. "'Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.'" *Keates v. Koile,* 883 F.3d 1228, 1235 (9th Cir. 2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). "Indeed, '[w]hen properly applied,' qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id*. (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Here, the Court decides the question of qualified immunity by determining whether preexisting law at the time the allegedly unlawful act is undertaken provided Defendants with "fair warning" that their conduct was unlawful." *Elliot-Park v. Manglona*, 592 F.3d 1003, 1008 (9th Cir. 2010) (quoting *Flores v. Morgan Hill Unified Schs.*, 324 F.3d 1130, 1136–37 (9th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)). "To determine whether a right was clearly established, a court turns to the Supreme Court and Ninth Circuit law existing at the time of the alleged act." *Cmty. House, Inc. v. City of Boise*, 623 F.3d 945, 967 (9th Cir. 2010).[4] *See also Hopson v. Alexander*, 71 F.4th 692, 697 (2023)

---

[4] In the Ninth Circuit, a court must be "hesitant to rely on district court decisions" as clearly establishing law for purposes of qualified immunity. *Evans v. Skolnik*, 997 F.3d

(finding case directly on point not necessary, but "rule is only clearly established if it has been settled by controlling authority or a robust consensus of cases of persuasive authority that clearly prohibits the officer's conduct in the particular circumstances, with a high degree of specificity").

The Supreme Court "has repeatedly told courts—*and the Ninth Circuit in particular*—not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *City and County of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1775-1776 (2015)). The Court has mandated that the "clearly established right must be defined with specificity." *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019) (finding that the Ninth Circuit erred when defining the right, generally, as "the right to be free from excessive force."). *See e.g., Hopson*, 71 F.4th at 697 (citing *Dist. Columbia v. Wesby*, 138 S.Ct 577, 590 (2018) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014)) ("Importantly, we may not 'define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.'")

Plaintiff does not need to proffer case law that is identical, but he must show that in light of preexisting law the unlawfulness is apparent. *See Hope*, 536 U.S. at 739 (finding prior circuit decision holding forms of corporal punishment, including handcuffing inmates to fences or cells for long periods even after need for emergency ended, was constitutionally infirm, clearly established it was cruel and unusual punishment to handcuff prisoner to hitching post). Case law, in factual terms, may not be "directly on point," but it must be close enough to have put "the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741. "[I]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Oliver v. Fiorino*, 586 F.3d 898, 907 (11th Cir. 2009) (cleaned up). The Court considers "whether the factual

---

1060, 1067 (9th Cir. 2021). "[A]s the Supreme Court has pointed out, district court decisions—unlike those from the courts of appeals—do not necessarily settle constitutional standards, because a decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Id.* (alterations and internal quotation marks omitted).

scenario that the official faced is fairly distinguishable from the circumstances facing a government official in a previous case*." Loftus v. Clark–Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012)). To make this showing, the Plaintiff may point to prior case law from the Supreme Court of the United States, the Ninth Circuit, or the highest court in the relevant state) that is "materially similar." *Gaines v. Wardynski*, 871 F.3d 1203, 1210 (11th Cir. 2017) (citing *Jones v. Franse*, 857 F.3d 843, 851–52 (2017)).

The Court turns to the question of whether the law was clearly established in 2021 to have given fair warning to Defendants that their conduct violated the Due Process Clause. The Court considers the facts as alleged in the Complaint referenced above to be true for the purpose of assessing the Defendants' conduct in the particular circumstances of this case. Plaintiff was removed from SDP because a contraband phone was found in his cell. After being afforded due process in the cell-phone disciplinary proceeding, Plaintiff was removed from SDP without due process, and returned to maximum custody from closed custody based on his STG validation, without notice and hearing, related to that status. Defendants have admitted that he was not afforded due process, including a right to be heard, prior to being moved from close custody to maximum custody.

The Court has considered the cases relied on and discussed in *Johnson.* While they reference clearly established law reflecting the right to avoid conditions in maximum custody without due process, in the context of this case- for purposes of qualified immunity, the Court may not define clearly established law at this high level of generality. None of the cases relied on in *Johnson* involved the particular circumstances of this case or the case in *Johnson*. Plaintiff offers no supporting case law, and the Court finds none until *Johnson.*

The government officials in *Johnson* faced circumstances similar to those confronting the Defendants, with some factual distinctions because Johnson was given notice and a hearing before being returned to maximum custody from closed custody. Both Johnson and Plaintiff were returned to maximum custody because they were validated STG members when their SDP status was revoked. The court concluded Johnson did not have a

liberty interest in the revocation of SDP but did have a liberty interest in avoiding being returned to maximum custody from closed custody. The court in *Johnson* applied clearly established law requiring due process when prisoners are placed or retained in custody where conditions are substantially more restrictive than general population from which he was moved. *Johnson,* 55 F.4th at 1180-1201 (discussing: *Sandin v. Conner,* 515 U.S. 472 (1995) (due process required for disciplinary segregation for misconduct); *Ramirez v. Galaza*, 334 F.3d 850 (9th Cir. 2003) (same); *Melnik v. Dzurenda,* 14 F.3d 981, 986 (9th Cir. 2021) (same, requires access to evidence); *Wilkinson v. Austin,* 545 U.S. 209 (2005) (due process for assignment to a supermax facility); *Brown v. Or. Dept. Corrections,* 751 F.3d 983 (9th Cir. 2014) (due process for solitary confinement); *Hewitt v. Helms,* 459 U.S. 460, 477 n.9 (1983) (placement in administrative segregation requires meaningful periodic review).

In *Johnson*, the court recognized different process is due to protect an inmate's liberty interest in avoiding retention in solitary confinement and the process due for assignment to such conditions. *Johnson,* 55 F.4th at 1199 (citing *Toussaint v. McCarthy (Troussaint III),* 801 F.2d 1080, 1102 (9th Cir. 1986) ("analyzing separately the adequacy of procedures for placement and retention in solitary confinement") In *Johnson,* the court applied the standard for retention and required annual reviews of validated STG membership and the opportunity to renounce gang membership and debrief at any time. The court concluded this was not sufficient to protect the liberty interest in avoiding reassignment to maximum custody. The highest due process standard applies to assignments, placements, and transfers to maximum custody, including when a prisoner is returned to maximum custody when SDP is revoked. Even though Johnson had been given notice and a hearing before being returned to maximum custody from closed custody, meaningful due process required he be informed of the conduct that resulted in his return to maximum custody. *Johnson,* 55 F.4th at 1200-1201. It was not enough to tell him SDP was revoked and return him to maximum custody based on his validated STG membership.

The Court recognizes that *Johnson* described the liberty interests related to maximum custody confinement as "clearly established," but for the purpose of applying qualified immunity, we may not define clearly established law at a high level of generality because doing so avoids the crucial question of whether the official acted reasonably in the particular circumstances he faced. The cases relied on by the court in *Johnson* did not reach the particularized circumstances faced by the Defendants in this case. *Johnson* did. The Court finds that the particularized facts in *Johnson,* while distinguishable from the facts here, are materially similar to the facts in this case relevant to the alleged due process violation. After *Johnson,* the law is clearly established. The liberty interest in avoiding return/reassignment to maximum custody when SDP is revoked requires due process including notice and hearing sufficient to inform the prisoner of the factual basis for his return to maximum custody from close custody to enable him to prepare a defense against those accusation. *Johnson,* 55 F.4th at 1200.

### III.  Conclusion

The Court dismisses the Plaintiff's claim for injunctive relief as moot and grants summary judgment for Defendants based on qualified immunity because the alleged constitutional violation here was a reasonable but mistaken judgment about an open legal question.

**Accordingly,**

**IT IS ORDERED** that the Motion for Summary Judgment (Doc. 38) is GRANTED.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter Judgment, accordingly.

Dated this 29th day of September, 2023.

Honorable Cindy K. Jorgenson
United States District Judge